

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-2-2009

# USA v. Gravly

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4409

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Gravly" (2009). *2009 Decisions*. Paper 1086.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1086

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-4409

———

UNITED STATES OF AMERICA

v.

DWUANE GRAVLEY,
Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-642)
District Judge: Honorable Anne E. Thompson

———

Submitted Under Third Circuit LAR 34.1(a)
March 6, 2009

Before: SLOVITER and HARDIMAN, Circuit Judges, and POLLAK,[*] District Judge

(Filed: July 2, 2009)

_____

OPINION

_____

———

[*] Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

-1-

POLLAK, <u>District Judge</u>:

Appellant Dwayne Gravley was convicted by a jury of each count of a 5-count indictment: (1) possession with intent to distribute crack cocaine, (2) discharging a firearm in relation to a drug trafficking crime, (3) carjacking, (4) discharging a firearm in relation to the carjacking, and (5) being a felon in possession of a firearm.  On this appeal, Gravley raises several challenges to his conviction.  First, he argues that the prosecutor's conduct was sufficiently prejudicial to deprive him of his right to a fair trial.  Second, he argues that evidence of his past criminal activity was improperly admitted.  Third, he argues that his Sixth Amendment confrontation rights were violated when he was denied an opportunity to fully cross-examine two government witnesses.  Finally, he argues that the District Court erred when it refused to instruct the jury on a necessity defense relating to the carjacking count.[1]

**I.**

The facts giving rise to Mr. Gravley's arrest, taken in the light most favorable to the government as the verdict winner, *see United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001), are as follows:  On July 30, 2001, Gravley went, in a Ford Escape and accompanied by his cousin Frantel Joyius Heigh, to the home of Sabrina Mosley.  Also

---

[1]  Gravley himself filed a supplemental brief raising issues not addressed by his attorney (with whom the record reflects he has not always been satisfied).  On August 29, 2008, this court denied Gravley's motions to remove appellate counsel and for permission to file a *pro se* brief.  The arguments not raised in the brief filed by Gravley's counsel have not been considered by this court.

residing in the home were Mosley's three minor sons and her brother, Fred.  Gravley was looking for Fred Mosley, and Gravley was carrying an Uzi.  Fred Mosley would not speak to  Gravley, who then left with Heigh in the Escape.  The Bridgeton Police Department was called, and Officer Michael Speranza and his partner arrived at the Mosley home to investigate.  Officer Speranza was familiar with Gravley, and after speaking with the Mosleys the officers left in their marked police car to look for Gravley.  They soon found the Ford Escape and began following it down the streets of Bridgeton.  The officers signaled for the Escape to stop, but Heigh, the driver, did not.  Gravley slid from the passenger's seat over to the driver's seat, stopped the Ford Escape, and exited through the driver's side door.  He then reached back into the car and grabbed the Uzi from Heigh.  Gravley ran through a parking lot; while running, he still carried the Uzi, which was fired at least twice during the flight.

After some time during which more officers joined the pursuit, Gravley ran into an intersection, where a Chrysler sedan was stopped at a red light.  The sedan was occupied by Grace Gale, the driver; her husband, the passenger; and Gale's two-year old son in the back seat.  Gravley, still in possession of the Uzi, opened the driver's door and pushed Gale towards the passenger side of the car.  At that moment, additional officers converged on the intersection, surrounding the Chrysler.  Gun shots were fired and the windshield of the car shattered, though it was disputed at trial whether the bullet that struck the glass came from inside the Chrysler or from the outside of the car.  Gale

climbed into the backseat of the car, grabbed her son, and escaped out one of the rear doors. Several police officers approached the Chrysler and fired on Gravley as he attempted to take cover on the floor of the front seat of the car. Gravley was eventually pulled from the car and transported to Cooper University Hospital for treatment for multiple gunshot wounds. A subsequent search (pursuant to a warrant) of the Ford Escape yielded drug paraphernalia and a half-ounce of crack cocaine. The jury found Gravley guilty on all charges, and this appeal followed.

## II.

### A.

Gravley's first contention on this appeal is that his trial was impermissibly tainted by prosecutorial misconduct, and he points to several incidents during the trial to support this claim. Because Gravley objected to these incidents at the time they occurred, the District Court's rulings on Gravley's objections are reviewed in accordance with the harmless error principles set forth in *United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995) (en banc) (holding that prosecutorial misconduct amounting to non-constitutional error "is harmless when it is *highly probable* that the error did not contribute to the judgment") (emphasis in original).

The first incident involves comments about the trial made by the prosecutor during closing arguments. During the trial, the defense called Detective William Skull of the New Jersey State Police to testify. During Gravley's attorney's examination of the

witness, Gravley indicated that he wanted to ask further questions of the witness. Several sidebar conferences were held between the district judge, Gravley, and defense counsel. In her closing-argument-rebuttal after defense counsel's closing argument, the prosecutor referred to this dispute, saying that the defendant "thinks that he's even smarter than his own defense attorney." S. App'x at 1160-61. Gravley's contention that this comment crossed the line is without merit–the comment was an isolated comment made in the course of the prosecutor's recounting the government's theory of the case. The prosecutor argued the case aggressively but did not invite the jury to reach a verdict based on anything other than the evidence.

Gravley also testified, and he argues that the prosecutor's questions to him on cross-examination were impermissible because he was asked to compare his version of events with the testimony of other witnesses. Gravley's counsel objected to these questions, and the objections were sustained in large part by the District Court, who permitted the government to question Gravley about what happened and whether he had heard the testimony of other witnesses, but did not permit the government to ask Gravley to comment on the testimony of other witnesses. The District Court explicitly directed the prosecutor to "not have one witness evaluate another witness' testimony." S. App'x at 839; *see also* S. App'x at 845, 851.

After the trial in this case, this court held in *United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006) that "asking one witness whether another is lying is inappropriate."

-5-

The court in *Harris* also held that allowing the line of question in that case was not "plain error" because the circuit had not previously ruled on the issue. *Id.* In light of the District Court's actions in the case at bar–the correct anticipation of *Harris* and the sustaining of Gravley's objections–and the subsequent clarification of what questions might permissibly be put to one witness concerning the testimony of another, the prosecutor's questioning here was not misconduct.

**B.**

Gravley's second main contention on appeal is that the District Court improperly admitted evidence of other crimes in violation of Rule 404(b). The District Court permitted the prosecutor, on cross-examination, to question Gravley about a 2001 arrest for possession of controlled substances with the intent to distribute them, after Gravley testified on direct that he had no involvement in drug activity, had never seen the drugs or paraphernalia found in the Ford Escape before, and that the drugs and paraphernalia belonged to Heigh, the passenger. The District Court properly admitted the evidence under Rule 404(b), limiting the questions to only the fact and the nature of the charge.[2]

*United States v. Givan*, 320 F.3d 452, 460-61 (3d Cir. 2003) (evidence of prior conviction

---

[2]The prosecutor did improperly compare the drugs associated with the 2001 arrest with the drugs found in the Escape in this case; however, the District Court struck that remark from the record. S. App'x at 871. The jury is presumed to have followed the instructions not to consider the statements of counsel as evidence, S. App'x at 1022, as well as the instructions to consider the evidence only with regard to Gravley's knowledge and intent concerning drugs, S. App'x at 1074-75. *See United States v. Givan*, 320 F.3d 452, 460-61 (3d Cir. 2003) (citing *United States v. Gilsenan*, 949 F.2d 90, 96 (3d Cir. 1991).

for felony drug offense properly admitted to show knowledge and rebut defense of "innocent association" with drugs found in car in which defendant was a passenger); *United States v. Boone*, 279 F.3d 163, 187 (3d Cir. 2002) (in drug case, introduction of evidence of prior drug trafficking permissible to refute defense of ignorance).

## C.

Next, Gravley argues that his Sixth Amendment right to confront the witnesses against him was violated when a recorded statement from Heigh was used against him; Heigh did not testify, apparently because the government could not locate her. She had given the police a statement after the events of July 30, 2001 were concluded, and the government used information from this statement to formulate questions put to Gravley on cross-examination. When Gravley objected to the questions, the government said, in front of the jury, that Heigh's statement provided the basis for the questions. Gravley also contends that the use of Heigh's statement in this way constituted inadmissible hearsay.

Heigh's statement was not admitted, and at the close of Gravley's testimony the District Court instructed the jury not to consider the content of Heigh's statement:

> Now, there was no testimony from Ms. Heigh under oath in this courtroom; you understand that. The questions were directed to the witness from some statements purportedly given by Ms. Heigh to law enforcement, but those statements are hearsay. She never testified here in open court under oath, so, ladies and gentlemen, you cannot consider that testimony as substantive testimony.

S. App'x at 877.

An out-of-court statement from a witness that is testimonial is barred by the

Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36 (2004). Heigh's statement appears to be a statement taken by a police officer in the course of an investigation, and this court assumes that it was testimonial in nature and that its admission might appear to run afoul of Gravley's confrontation rights. *United States v. Trala*, 386 F.3d 536, 544 (2004) (vacated 546 U.S. 1086 (2006) (remanded for resentencing in light of *United States v. Booker*)).

Gravley argues that the prosecutor's questions based on Heigh's statement "injected Heigh's recorded statement into the trial." However, Heigh did not testify and her statement was not admitted. There was therefore no violation of Gravley's confrontation rights. Moreover, any prejudice that might have resulted from the government's reference to Heigh's statement was rectified by the District Court's instruction not to consider the substance of the statement.

The government was required to have a good-faith basis for the questions posed to Gravley, and Heigh's statement provided that basis. We find no abuse of discretion in the District Court's ruling. *See also United States v. Cudlitz*, 72 F.3d 992, 1001 (1st Cir. 1996) (noting that a district judge "enjoys wide latitude in deciding whether a good faith basis exists").

**D.**

Gravley's next set of arguments concerns the testimony of government witness

Kamesha Bessix. The government turned over to defense counsel a copy of Bessix's criminal history extract in advance of the cross-examination. Then, during the cross-examination, there was some debate about whether a prior conviction was a felony for which she could be impeached. The District Court told defense counsel that he could further investigate the issue and recall Bessix if necessary. S. App'x at 360. A further review of Bessix's criminal history revealed that she was previously convicted of an impeachable offense. S. App'x at 642.

However, when defense counsel decided that he would recall Bessix, he could not locate her. S. App'x at 771. The District Court, concerned about delaying the trial, inquired as to what questions would be asked of the witness and ruled that defense counsel's proposed lines of questioning about collateral matters, including her current employment and whether she had ever testified before, were irrelevant and would not be admitted. That ruling is not being challenged. Instead of waiting for Bessix to be brought in, the court permitted the introduction of the evidence of the felony conviction without Bessix retaking the stand, and a stipulation was read to the jury.

Gravley now argues that the District Court's refusal to hold the trial open to permit him to recall Bessix denied him his right to fully cross-examine a witness who had presented testimony against him. However, Gravley had a full opportunity to question Bessix when she first testified, and at the time she initially testified Gravley's counsel could have asked about all of the topics for which he sought to re-call her. *See, e.g.*,

*United States v. Kenny*, 462 F.2d 1205, 1226 (3d Cir. 1972) (affirming a district court's decision to refuse to recall a witness for further cross-examination where "[t]he documents upon which this cross examination was proposed to be based were available to counsel at the time of the original cross examination"). Gravley's argument implicitly challenges both the District Court's decision not to grant a continuance to locate Bessix and not to permit additional cross-examination of Bessix; both decisions lie within the discretion of the District Court. *See United States v. Khorozian*, 333 F.3d 498, 507 (3d Cir. 2003) (reviewing refusal to grant a continuance for abuse of discretion); *United States v. Messare*, 405 F.3d 161, 169 (3d Cir. 2005) (reviewing limitations placed on cross-examination for abuse of discretion). Though defense counsel's impeachment of Bessix might have been more effective had he asked about her prior conviction during live testimony, the District Court did not abuse its discretion in refusing to permit a delay of unknown length in order to adduce a fact that could be entered into evidence through a stipulation. Gravley's right to cross-examination was not violated by the District Court's rulings regarding Bessix.

**E.**

Finally, Gravley argues that the District Court erred when it refused to instruct the jury on necessity or duress relating to the carjacking. He contends, and he testified at trial, that his entry into the Gales' vehicle was only an attempt to seek refuge from the police, who he believed were going to kill him. The District Court disagreed and, finding

-10-

"no reasonable basis" in Gravley's testimony for the requested instruction, refused to instruct the jury on duress.  S. App'x 962-70.

To be entitled to an instruction on duress, a defendant must show that he had:  (1) an immediate threat of death or serious bodily injury; (2) a well-grounded fear that the threat would be carried out; (3) no reasonable opportunity to escape the threatened harm; and (4) not recklessly placed himself in a situation in which he would be forced to engage in criminal conduct.  *See United States v. Miller*, 59 F.3d 417, 422 (3d Cir. 1995); *United States v. Paolello*, 951 F.2d 537, 541 (3d Cir. 1991).  The District Court properly determined that the elements of duress were not met.  If Gravley indeed had a well-grounded fear and sought safety, there were clear alternatives to carjacking the Gales–he could have gone into one of the other buildings he passed on his path from the Ford Escape to the Gales' car or simply surrendered to police.  Moreover, Gravley had placed himself in a dangerous situation necessitating refuge in the first place.  The District Court did not err in denying the request for the instruction.

## III.

For the foregoing reasons, the judgment of the District Court will be affirmed.